UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHRISTOPHER A. WOODS, ON BEHALF OF HIMSELF AND THE CLASS HE SEEKS TO REPRESENT,<br><br>*Plaintiff*,<br><br>v.<br><br>ALASKA STATE EMPLOYEES ASSOCIATION/ AFSCME LOCAL 52, AFL-CIO; AND KELLY TSHIBAKA, COMMISSIONER OF ADMINISTRATION FOR THE STATE OF ALASKA,<br><br>*Defendants*. | CIVIL ACTION NO. _____<br><br>**PLAINTIFF'S VERIFIED CLASS ACTION COMPLAINT** |

## INTRODUCTION

1. This is a civil rights, class action pursuant to 42 U.S.C. § 1983, seeking equitable relief, declaratory relief, nominal damages, and other relief to prevent and/or redress the deprivation under color of Alaska law the rights, privileges and immunities under the United States Constitution of Plaintiff and all others similarly situated. It seeks to redress and prevent the deprivation under color of the Public Employment Relations Act, ALASKA STAT. 23.40.070 *et seq.*, and the collective bargaining agreement between Plaintiff's and class members' exclusive bargaining representative and their public employer, of the rights, privileges, and immunities under the First and Fourteenth Amendments of the United States Constitution. Defendants have deprived, and continue to deprive, Plaintiff and class members of their constitutional rights. Specifically, State of Alaska, through its Commissioner of Administration, Defendant Kelly Tshibaka ("Tshibaka"), at the direction of Defendant Alaska State Employees

Page -1-

Association/AFSCME Local 52, AFL-CIO ("ASEA"), has persisted in seizing from Plaintiff union dues and/or fees notwithstanding his resignation from union membership and his revocation of his dues checkoff authorization. ASEA has accepted and retained, and continues to accept and retain, the dues and/or fees Tshibaka has seized from Plaintiff's and other class members' wages. This seizure and retention of union dues and/or fees violates Plaintiff's First and Fourteenth Amendment rights as set forth by the United States Supreme Court in *Janus v. AFSCME*, 138 S.Ct. 2448 (2018). Unless this Court enters a preliminary and permanent injunction against Defendants to prevent any further seizures of union dues, and other relief, Plaintiff's and each class member's First and Fourteenth Amendment rights will be irreparably damaged.

## JURISDICTION AND VENUE

2. This action arises under the Constitution and laws of the United States, particularly the First and Fourteenth Amendments to the United States Constitution. The jurisdiction of this Court, therefore, is invoked under 28 U.S.C. § 1331.

3. This is also an action under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Plaintiff and class members by the Constitution of the United States, particularly the First and Fourteenth Amendments thereto. The jurisdiction of this Court, therefore, is invoked under 28 U.S.C. § 1343, pursuant to which this Court may grant: a) nominal damages for the violation of Plaintiff's and class members' First and Fourteenth Amendment rights; b) preliminary and permanent injunctive relief against any further seizures of union dues and/or union dues, however denominated and adverse employment actions for his refusal to comply with ASEA's unlawful demands; and c) reasonable attorneys' fees and costs, pursuant to 28

U.S.C. § 1920 and 42 U.S.C. § 1988.

4. This is also a case of actual controversy where Plaintiff, on behalf of himself and the class he seeks to represent, is seeking a declaration of his rights under the Constitution of the United States. Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of Plaintiff and class members and grant further necessary and proper relief based thereon, including preliminary and permanent injunctive relief, pursuant to Rule 65, FED.R.CIV.P.

5. Pursuant to 28 U.S.C. § 1391(b) and § 1392, venue is proper in this Court because Defendants reside and have offices and conduct their business in the judicial district of the United States District Court for the District of Alaska.

## PARTIES

6. Plaintiff Christopher A. Woods is employed as a Vocational Instructor at the Goose Creek Correctional Center. As such, he is a "public employee" of the State of Alaska within the meaning of Alaska's Public Employment Relations Act ("PERA"), ALASKA STAT. § 23.40.250(6), in a bargaining unit of employees known as the General Government Unit ("GGU") represented, exclusively for purposes of collective bargaining, by Defendant Alaska State Employees Association/AFSCME Local 52 ("ASEA"). Plaintiff is not a member of ASEA, having resigned from union membership and attempted to revoke his dues checkoff authorization card in November 2019.

7. Defendant ASEA is the "bargaining agent" and "exclusive representative" of Plaintiff and other members of their bargaining unit, pursuant to ALASKA STAT. § 23.40.100, and an organization within the meaning of the PERA, ALASKA STAT. § 23.40.250(5), whose offices are located at 2601 Denali Street, Anchorage, Alaska 99503. ASEA is an unincorporated association formed and existing under the laws of the State of Alaska, and conducts business

throughout the State of Alaska. ASEA is affiliated with and pays money, either directly or indirectly to, *inter alia*, the American Federation of State, County, and Municipal Employees ("AFSCME"), and the American Federation of Labor-Congress of Industrial Organizations ("AFL-CIO").

8. Defendant Kelly Tshibaka is the Commissioner of Administration for the State of Alaska ("Tshibaka"). In that capacity, she is responsible for, *inter alia*, the Department of Personnel and Labor Relations. She is therefore responsible for the negotiation and enforcement of the State's collective bargaining agreements with labor unions, and her predecessor negotiated and is a signatory to the current collective bargaining agreement between the State of Alaska ("State") and ASEA. She maintains her offices at 550 West Seventh Avenue, Suite 1970, Anchorage, Alaska 99501, and is sued in her official capacity only.

## CLASS ACTION ALLEGATIONS

9. Plaintiff brings this case on his own behalf and on behalf of others similarly situated, and seeks certification of two classes, as follows:

    (a) First, Plaintiff seeks the certification of a class under Rule 23(b)(1)(A), (b)(1)(B), and (b)(2), FED.R.CIV.P., of a class ("the General Class") of all unit employees who are or were subject to the Union Membership Card/Payroll Deduction Authorization card (Exhibit A hereto); and

    (b) Second, Plaintiffs seeks certification, under Rule 23(b), and (b)(3), FED.R.CIV.P., of a subclass ("the Revocation Subclass") consisting of all unit employees from whom, at any time after 27 June 2018, Defendants deducted or collected union dues after receiving notification from such employees that he or she did not consent and/or revoked his or her consent to paying union dues.

Page -4-

10. There are over eight thousand (8,000) employees in the General Government Unit represented by ASEA. On information and belief, the vast majority of these employees are subject to the Union Membership Card/Payroll Deduction Authorization card (Exhibit A hereto). The number of General Class members makes joinder of the individual General Class members impractical.

11. On information and belief, Defendants have deducted or collected union dues or fees, and will continue to deduct and collect union dues or fees, from unit employees after receiving notification they do not consent to paying union dues, rendering joinder of individual Revocation Subclass members impractical.

12. There are questions of law and fact comment to all General Class and Revocation Subclass members. Factually, all are subject to the same dues deduction practices. The dispositive question of law is the same for Plaintiff as it is for the General Class and Revocation Subclass members: are Defendants' dues deduction practices constitutional under the First Amendment, as set forth in *Janus v. AFSCME*, 138 S.Ct. 2448, 2486 (2018).

13. Plaintiff's claims are typical of the claims of the members of the General Class and the Revocation Subclass, because all claims concern whether Defendants' dues deduction practices violate their First Amendment rights.

14. Plaintiff will adequately represent the interests of the proposed General Class and Revocation Subclass, and have no interests antagonistic to the General Class and Revocation Subclass.

15. A class action by General Class members can be maintained under Rule 23(b)(1)(A), Fed.R.Civ.P., because separate actions by General Class members concerning the constitutionality of Defendants' maintenance and enforcement of their dues deduction procedures

could risk inconsistent adjudications that would establish incompatible standards of conduct for Defendants.

16. A class action by General Class members can be maintained under Rule 23(b)(1)(B), FED.R.CIV.P., because an adjudication determining the constitutionality of Defendants' dues deduction procedures will as a practical matter, be dispositive of the interests of all General Class members or substantially impair or impede their ability to exercise their First Amendment rights.

17. A class action by General Class members and Revocation Subclass members can be maintained under Rule 23(b)(2), FED.R.CIV.P., because Defendants, by maintaining and enforcing their dues deduction procedures, have acted or refused to act on grounds that apply generally to members of the General Class and Revocation Subclass, so that final injunctive or declaratory relief is appropriate for the General Class and Revocation Subclass as a whole.

18. A class action by Revocation Subclass members can be maintained under Rule 23(b)(2), FED.R.CIV.P., because Defendants, by deducting and collecting union dues from Revocation Subclass members' wages without their consent and without clear and compelling evidence that they waived their First Amendment rights to refrain from subsidizing ASEA and its speech, have acted or refused to act on grounds that apply generally to members of the Revocation Subclass, so that final injunctive or declaratory relief is appropriate for the Revocation Subclass as a whole.

19. A class action by Revocation Subclass members can be maintained under Rule 23(b)(3), FED.R.CIV.P., because the common questions of law and fact identified in this complaint predominate over any questions affecting only individual Revocation Subclass members. A class action is superior to other available methods for the fair and efficient adjudication of the

controversy because, among other things, all Revocation Subclass members are subject to the same violation of their constitutional rights, and the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions. The amount of the unauthorized deductions taken from Plaintiff and Revocation Subclass Members is known to Defendants.

## FACTUAL ALLEGATIONS

*Defendants' Dues Deduction and Forced-Unionism Policies*

20. The State and ASEA have been parties to a series of collective bargaining agreements ("CBA") governing the terms and conditions of employment for over eight thousand (8,000) State employees who are employed in the GGU. The current agreement is effective by its terms from 1 July 2019, through 30 June 2022 ("the current CBA"). Relevant portions of the CBA are attached hereto and incorporated herein as Exhibit B.

21. State law provides that "Upon written authorization of a public employee within a bargaining unit, the public employer shall deduct from the payroll of the public employee the monthly amount of dues, fees, and other employee benefits as certified by the secretary of the exclusive bargaining representative and shall deliver it to the chief fiscal officer of the exclusive bargaining representative." ALASKA STAT. § 23.40.200.

22. Article 3 of the current CBA between ASEA and the State provides that "Bargaining unit members may authorize payroll deductions in writing on the form provided by the Union. Such payroll deductions will be transmitted to the Union by the state. The amount of voluntary contribution shall be stated on the authorization form, together with the bargaining member's employee identification number." Exhibit B, Art. 3, § 3.04(c).

23. ASEA's most recent payroll deduction form is a dual "Union Membership

Card/Payroll Deduction Authorization," pre-marked to designate union membership. Exhibit A. A copy of the form signed by Plaintiff, dated 14 August 2017, is attached hereto and incorporated herein as Exhibit C.

24. ASEA's payroll deduction form provides in relevant part that:

> for a period of one year from the date of execution or until the termination date of the collective bargaining agreement (if there is one) between the Employer and the Union, whichever occurs sooner, and for year to year thereafter, unless I give the Employer and the Union written notice of revocation not less than ten (10) days and not more than twenty (20) days before the end of any yearly period.

Exhibits A & C. Nowhere is "The amount of voluntary contribution ... stated on the authorization form...." Exhibit B, Art. 3, § 3.04(c).

25. On information and belief, the payroll deduction form attached hereto as Exhibit A, and/or forms substantially similar to it, is the form that Defendants use and rely upon to deduct union dues and, prior to 27 June 2018, agency fees from employees' wages under Article 3, §3.04(c), of the State/ASEA CBA.

26. *Inter alia*, the authorization form states that "My decision to pay my dues by way of payroll deduction, as opposed to other means of payment, is voluntary and not a condition of my employment." Exhibits A & C.

27. During the period from 1 July 2016, through 30 June 2019, and in a series of CBAs dating back at least to 1 July 2004, the State and ASEA were parties to a series of CBAs which contained in "ARTICLE 3 – Union Security" a section entitled "Agency Shop," providing as follows:

> B. From the effective date of this Agreement through the expiration date, all bargaining unit members covered by this Agreement shall, as a condition of continued employment, either become a member of the UNION or become an agency fee payer. The Union dues/agency fee shall be in an amount set by the Union. Payment of Union dues or agency fees shall commence no

          later than thirty (30) calendar days after the date of hire.
- C.     Union written request by the Union Executive Director to the Director of the Division of Personnel and Labor Relations, a bargaining unit member who has been employed for more than thirty (30) calendar days and who is no complying with the agency shop provisions of this Agreement shall be dismissed by the Employer.

CBA, Art. 3, § 3.03. That agreement also contained a provision providing for payroll deductions from unit employees' wages, as follows:

- C.     Bargaining unit members may authorize payroll deductions in writing on the form provided by the Union. Such payroll deductions will be transmitted to the Union by the state. The amount of voluntary contribution shall be stated on the authorization form, together with the bargaining unit member's employee identification number.

CBA, Art. 3, § 3.04(C) ("Payroll Deduction"). A true and correct copy of relevant portions of the CBA effective from 1 July 2016, through 30 June 2019 ("the prior CBA"), are attached hereto and incorporated herein as Exhibit D.

      28.     On or about 27 June 2018, Defendants ceased enforcing Art. 3, § 3.03 of the prior CBA against GGU employees who were not then members of ASEA because the Supreme Court in *Janus*, 138 S.Ct. at 2486, held forced fee requirements unconstitutional under the First Amendment.

      29.     The State and ASEA, subsequent to the expiration of the prior CBA, entered into the current CBA, effective by its terms from 1 July 2019, through 30 June 2022. *See* Exhibit B.

      30.     The current CBA omits the "Agency Shop" section of prior CBAs. *See* Exhibit B, current CBA, Art. 3; *compare* Exhibit D, prior CBA, CBA, Art. 3, § 3.03(B). However, it maintains the "Payroll Deduction" section contained in prior CBAs. *See* Exhibit B, current CBA, CBA, Art. 3, § 3.04(C).

      31.     Defendants jointly enforce the current CBA's Art. 3, § 3.04(C), against GGU

employees by deducting and collecting union dues from the wages of GGU employees, including Plaintiff, who resign from union membership and revoke their dues deduction authorizations outside of the escape period specified in the dues deduction authorization.

32. ASEA's dues deduction authorization form, and Tshibaka's and ASEA's enforcement of it, prohibits GGU employees from exercising their First Amendment right to refrain from subsidizing ASEA and its speech except for a limited, ten-day escape period which varies from employee to employee.

33. Defendants continue to enforce the current CBA's Art. 3, § 3.04(C), and ASEA's dues checkoff authorization form, against unit employees notwithstanding the Supreme Court's decision in *Janus*.

34. The current CBA, like its predecessors, contains an "Indemnification of the Employer" section, which provides that:

> The Union shall defend, indemnify, and save the Employer harmless against any and all claims, demands, suits, grievances, or other liability (including attorneys' fees incurred by the Employer) that arise out of or by reason of actions taken by the Employer pursuant to this Article, except those actions caused by the Employer's negligence.

Exhibit B, Art. 3, § 3.06.

*Enforcement of Defendants' Dues Deduction Policies Against Plaintiff and the Class*

35. Plaintiff is currently, and has been at all times material hereto, a State employee employed in the GGU bargaining unit, serving as a Vocational Instructor at the Goose Creek Correctional Center.

36. Plaintiff began his employment with the State on 16 October 2009, in the Labor, Trades and Craft bargaining unit represented by Public Employees Local #71, an affiliate of the Laborers International Union of North American ("LIUNA"), AFL-CIO.

37. Plaintiff transferred to his current position, within the GGU bargaining unit, on or about 28 May 2013. At that time, he executed a payroll deduction form differing substantially from Exhibits B(1) & B(2), immediately joining the ASEA because he was told by a union representative that he had no choice.

38. On 14 August 2017, Plaintiff executed the payroll deduction form most currently in effect. Exhibit C. At that time, he was required, pursuant to the "Agency Shop" section of the prior CBA, Exhibit D, Art. 3, § 3.03(B), to pay forced fees to ASEA if he did not authorize the deduction of union dues from his wages.

39. At all relevant times, and continuing to the present, Tshibaka has deducted union dues from Plaintiff's wages, and ASEA has collected and accepted those dues.

40. Plaintiff opposes financially supporting ASEA and its speech. But for Defendants' enforcement of the forced-fee requirement in the prior CBA, Plaintiff would not have financially supported ASEA.

41. On or about 26 November 2019, Plaintiff sent an email to ASEA with the subject line "Withdrawal," and stating that he was "requesting to top my union dues withdrawal from my wages effective 11/30/2019." A true and correct copy of that email is attached hereto and incorporated herein as Exhibit E.

42. Later that same day, Plaintiff received a response from Toya Winton at ASEA, stating that his email had been forwarded to her, and that, based upon the payroll deduction form that he has signed on 14 August 2017, *see* Exhibit C, he could only "opt out and not be a union member with written notice to this office not more than 20 days and not less than 10 days each subsequent year (12months) from the signature date" on that card. A true and correct copy of that email chain is attached hereto and incorporated herein as Exhibit F.

43. Plaintiff responded by email on 2 December 2019, to Ms. Winton and the payroll office of the Corrections Department. In the email, he stated his "written notification to my union and employer revocation on 12/12/2019 (*19 calendar days prior to the end of the year*) for the calendar year ending 12/31/2019." *See* Exhibit F. Arielle Parker Pargnoli of the payroll office acknowledged receipt, with a copy to Ms. Winton. *Id.* Ms. Winton responded to Ms. Pargnoli on 4 December 2019, stating that "ASEA is still communicating with [Plaintiff] concerning this matter." *Id.*

44. To date, Plaintiff has not received any further communications from either Ms. Winton or Ms. Pargnoli regarding Plaintiff's withdrawal from membership and revocation of his payroll deduction form.

45. Defendants did not honor Plaintiff's request, and continue to deduct and collect union dues from his wages pursuant to the current CBA and his payroll deduction form.

46. On information and belief, Defendants have continued and will continue to jointly prohibit Plaintiff and similarly situated employees from stopping dues deductions exception during a brief, ten-day escape period, and will continue to deduct and collect union dues from Plaintiff and similarly situated employees without clear and compelling evidence that they have waived their First Amendment right to refrain from subsidizing ASEA's speech.

## CAUSE OF ACTION

47. Plaintiff realleges and incorporates by reference herein the allegations set forth above.

48. Defendants act jointly and under color of State law by maintaining and enforcing Art. 3, § 3.03(C) of their current CBA, by deducting and causing the deduction of union dues from unit employees' wages, and by collecting and/or retaining union dues deducted from GGU

employees' wages.

49. In *Janus v. AFSCME*, 138 S.Ct. 2448, 2486 (2018), the United States Supreme Court held that it violates the First Amendment for a public employer to deduct union dues and fees from public employees' wages without their affirmative consent. The Court further held that, to be effective, an individual's consent to pay union dues or fees must meet the criteria for a waiver of First Amendment rights. *Id.*

50. A valid waver of First Amendment rights requires clear and compelling evidence that the putative waiver was voluntary, knowing, and intelligent, and that enforcement of the waiver is not against public policy. Defendants bear the burden of proving that these criteria are satisfied.

51. Defendants cannot prove that Plaintiff and General Class and Revocation Subclass members voluntarily, knowingly, and intelligently waived their First Amendment rights not to subsidize ASEA's speech because, *inter alia*, Defendants' payroll deduction forms: (a) do not inform employees that they have a First Amendment right not to financially support an exclusive representative and its speech; (b) do not state that the employee agrees to waive that right; and (c) if signed prior to 27 June 2018, were signed prior to the Supreme Court's recognition that public employees have a First Amendment right not to subsidize a union's speech and at a time during which employees were required to pay forced fees to ASEA as a condition of their employment.

52. Plaintiffs and General Class and Revocation Subclass members did not voluntarily, knowingly, or intelligently consent to any restriction on their ability to revoke a payroll deduction authorization or to stop the deduction and collection of union dues from their wages.

53. Defendants, acting jointly and pursuant to their current CBA, are deducting and

collecting union dues from GGU employees' wages without clear and compelling evidence that they voluntarily, knowingly, and intelligently waived their First Amendment right not to subsidize ASEA and its speech.

54. Defendants' maintenance and enforcement of current CBA Art. 3, § 3.03(C) and their restriction on employees' ability to terminate dues deductions are against public policy because they significantly impinge on employees' First Amendment rights by compelling employees, who do not or no longer want to subsidize ASEA's speech, to subsidize that speech for the remainder of the collective bargaining agreement's term. No countervailing public interest justifies this significant impingement on First Amendment rights.

## COUNT I

**(Prohibiting Revocation of Dues Deduction Authorizations Violates the First Amendment)**

55. Plaintiff realleges and incorporates by reference herein the allegations set forth above.

56. Defendants, by prohibiting Plaintiff, General Class Members, and Revocation Subclass Members from exercising their First Amendment right to refrain from subsidizing ASEA and its speech during all but ten (10) days of each year, are depriving the Plaintiff, General Class Members, and Revocation Subclass of their First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

57. Plaintiff, General Class Members, and Revocation Subclass Members are suffering the irreparable harm and injury inherent in a violation of First Amendment rights, for which there is no adequate remedy at law.

## COUNT II

### (Nonconsensual Dues Deductions Violate the First Amendment)

58. Plaintiff realleges and incorporates by reference herein the allegations set forth above.

59. Defendants, by deducting and collecting union dues from Plaintiffs and Revocation Subclass members without clear and compelling evidence that they waived their First Amendment rights to refrain from subsidizing ASEA and its speech, are depriving Plaintiffs and Revocation Subclass members of their First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

60. Current CBA Art. 3, § 3.03(C), and any other agreement between Defendant ASEA and the State that requires the State to deduct union dues from unit employees, is unconstitutional under the First Amendment to the extent it is enforced to cause the deduction of union dues from GGU employees without clear and compelling evidence that the employees waived their First Amendment rights to refrain from subsidizing ASSEA and its speech.

61. ALASKA STAT. § 23.40.220 is unconstitutional under the First Amendment to the extent it requires that public employers deduct union dues, fees, or assessments from employees for the benefit of the exclusive bargaining representative without clear and compelling evidence that the employees waived their First Amendment rights to refrain from subsidizing an exclusive bargaining representative and its speech.

62. Plaintiffs and Revocation Subclass Members are suffering the irreparable harm and injury inherent in a violation of First Amendment rights, for which there is no adequate remedy at law.

## COUNT III

### (The Indemnification Clause is Void as Against Public Policy)

63. Plaintiff realleges and incorporates by reference herein the allegations set forth above.

64. ASEA's and the State's negotiation and maintenance of current CBA Art. 3, § 3.06, in which ASEA agrees to indemnify the State "against any and all claims, demands, suits, grievances, or other liability (including attorneys' fees incurred by the Employer) that arise out of or by reason of actions taken by the Employer pursuant to this Article, except those actions caused by the Employer's negligence," provided and continues to provide the State of Alaska and its officials with an incentive not to ensure that its deductions of union dues from unit employees conform to the First Amendment and 42 U.S.C. § 1983.

65. Defendants maintenance of current CBA Art. 3, § 3.06, deprives Plaintiffs, General Class members, and Revocation Subclass members of their First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

66. Current CBA Art. 3, § 3.06, is void and enforceable as against public policy.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that this Court:

A. Issue a declaratory judgment that Defendants violated and are violating the First Amendment, as secured against State infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, by: (1) maintaining and enforcing current CBA Art. 3, § 3.03(C) and ASEA's payroll deduction authorization; and (2) enforcing current CBA Art. 3, § 3.03(C) or otherwise deducting

union dues from unit employees' wages without clear and compelling evidence that the employees waived their First Amendment right to refrain from subsidizing a union and its speech.

B. Issue a declaratory judgment that ALASKA STAT. § 23.40.220 is unconstitutional under the First Amendment, as secured against State infringement by the Fourteenth Amendment, and 42 U.S.C. § 1983, to the extent it requires that the State and its officials deduct union dues, fees, or assessments from employees without clear and compelling evidence that the employees waived their First Amendment rights to refrain from subsidizing an exclusive representative and its speech.

C. Permanently enjoin Defendants, along with affiliates, agents, and any other person or entity in active concert or participation with them, from engaging in the conduct that Plaintiff requests be declared unconstitutional.

D. Award equitable relief that requires the Defendants to provide Plaintiff, General Class members, and Revocation Subclass members with written notice that Defendants' restrictions on employees' right to terminate dues deductions are unconstitutional and unenforceable, that employees have the right to stop the deduction and collection of union dues from them at any time, and an opportunity retroactively to exercise that right;

E. Award compensatory damages to Plaintiff and Revocation Subclass Members;

F. Award nominal damages to Plaintiff, General Class Members, and Revocation Subclass Members;

G. Award Plaintiff his costs and reasonable attorneys' fees pursuant to 28 U.S.C. § 1920 and the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988; and

////

////

Page -17-

Case 3:20-cv-00074-HRH   Document 1   Filed 04/01/20   Page 17 of 19

H. Grant other and additional relief as the Court may deem just and proper.

DATED: 27 March 2020

                                                       Respectfully submitted,

                                                      /s/ W. James Young

W. JAMES YOUNG, Esq.[*]
WILLIAM L. MESSENGER, Esq.[*]
ALYSSA K. HAZELWOOD, Esq.[*]
c/o National Right to Work Legal
      Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
TELEPHONE: (703) 321-8510
FACSIMILE: (703) 321-9319
wjy@nrtw.org
wlm@nrtw.org
akh@nrtw.org

ATTORNEYS FOR PLAINTIFF AND THE CLASSES
HE SEEKS TO REPRESENT

H:\WP\Alaska Cases\Woods.AK\Initiating Documents\Complaint.3d.wpd
Friday, 27 March 2020, 13:10:19 PM

---

[*] *Pro Hac Vice* Motion to be submitted.

## VERIFICATION OF COMPLAINT

Christopher A. Woods, pursuant to Section 1746 of the Judicial Code, 28 U.S.C. § 1746, declares as follows:

I am named as a Plaintiff in the within suit and am employed by the State of Alaska. I am not a member of Defendant Alaska State Employees Association/AFSCME Local 52.

I have read the foregoing Complaint, and state upon my knowledge, information, and belief that the statements and allegations contained herein are true and correct.

As stated more fully in the Complaint, ASEA has collected full union dues from my wages, subsequent to my resignation from union membership and revocation of my payroll deduction authorization resulting in a forced loan from me that will be spent on political activities to which I object.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 26 March 2020.

_____
CHRISTOPHER A. WOODS