IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHRISTOPHER A. WOODS, on behalf of himself and the class he seeks to represent,<br><br>          Plaintiff,<br><br> vs.<br><br>ALASKA STATE EMPLOYEES ASS'N/ AFSCME LOCAL 52, AFL-CIO; and KELLY TSHIBAKA, Commissioner of Administration for the State of Alaska,<br><br>          Defendants. | No. 3:20-cv-0074-HRH |

O R D E R

Motion for Summary Judgment

Defendant Alaska State Employees Association/AFSCME Local 52 ("ASEA") moves for summary judgment.[1] This motion is opposed by plaintiff Christopher A. Woods[2] and defendant Kelly Tshibaka.[3] Oral argument was not requested and is not deemed necessary.

---

[1]Docket No. 38.

[2]Docket No. 40.

[3]Docket No. 39.

-1-

Facts[4]

Plaintiff is employed as a vocational instructor by the State of Alaska. Plaintiff is employed in a bargaining unit that ASEA exclusively represents for purposes of collective bargaining, the General Government Unit ("GGU"). Tshibaka is the Commissioner of the Department of Administration for the State of Alaska and is the state official responsible for the implementation of the State's collective bargaining agreements with ASEA.

Employees of the State of Alaska are not required to become union members as a condition of employment. "Alaska law makes union membership for state employees voluntary." Creed v. Alaska State Employees Association/AFSCME Local 52, --- F.3d ---, 2020 WL 4004794, at *1 (D. Alaska 2020).

Employees who sign union membership and dues deduction authorization forms become ASEA members and pay union membership dues to ASEA by deductions from their paychecks. ASEA members have membership rights including, for example, the right to vote in union officer elections, run for union office, participate in the union's internal affairs, be elected or appointed to serve as a union steward, and vote on whether to ratify a collective bargaining agreement applicable to their bargaining unit. ASEA members also have access to members-only benefits, including, for example, discounts on various goods and services including credit cards and rental cars; access to the GGU dental benefit, AFSCME's free

---

[4]Plaintiff and ASEA stipulated to the facts that they believed were material to the instant motion for summary judgment. Docket No. 36. The facts as set out below are largely taken from these stipulated facts.

college benefit, and no-cost life insurance; and invitations to members-only events. Non-members do not have these membership rights or access to these members-only benefits.

The State and ASEA are currently parties to a collective bargaining agreement effective from July 1, 2019 through June 20, 2022 ("the current CBA"). The current CBA governs the terms and conditions of employment of state employees in the GGU bargaining unit. In accordance with the current CBA, the State deducts union membership dues from the wages of employees who signed a dues deduction authorization form, and remits those dues to ASEA.

Plaintiff first joined ASEA in June 2013. In April 2017, plaintiff volunteered and was elected by the Mat-Su Chapter of ASEA to serve as a Union Steward for that chapter. Plaintiff signed a new union membership and dues deduction authorization form on August 14, 2017. That authorization form provided:

> I hereby apply for or commit to maintain my membership in ASEA/AFSCME Local 52 and I agree to abide by its Constitution and Bylaws. By this application, I authorize ASEA/ AFSCME Local 52 and its successor or assign . . . to act as my exclusive bargaining representative for purposes of collective bargaining with respect to wages, hours and other terms and conditions of employment with my Employer.
>
> Effective immediately, I hereby voluntarily authorize and direct my Employer to deduct from my pay each period, regardless of whether I am or remain a member of ASEA, the amount of dues certified by ASEA, and as they may be adjusted periodically by ASEA. I further authorize my Employer to remit such amount monthly to the ASEA. My decision to pay my dues by way of payroll deduction, as opposed to other means of payment, is voluntary and not a condition of my employment.

-3-

Case 3:20-cv-00074-HRH   Document 43   Filed 10/27/20   Page 3 of 18

college benefit, and no-cost life insurance; and invitations to members-only events. Non-members do not have these membership rights or access to these members-only benefits.

The State and ASEA are currently parties to a collective bargaining agreement effective from July 1, 2019 through June 20, 2022 ("the current CBA"). The current CBA governs the terms and conditions of employment of state employees in the GGU bargaining unit. In accordance with the current CBA, the State deducts union membership dues from the wages of employees who signed a dues deduction authorization form, and remits those dues to ASEA.

Plaintiff first joined ASEA in June 2013. In April 2017, plaintiff volunteered and was elected by the Mat-Su Chapter of ASEA to serve as a Union Steward for that chapter. Plaintiff signed a new union membership and dues deduction authorization form on August 14, 2017. That authorization form provided:

> I hereby apply for or commit to maintain my membership in ASEA/AFSCME Local 52 and I agree to abide by its Constitution and Bylaws. By this application, I authorize ASEA/ AFSCME Local 52 and its successor or assign . . . to act as my exclusive bargaining representative for purposes of collective bargaining with respect to wages, hours and other terms and conditions of employment with my Employer.
>
> Effective immediately, I hereby voluntarily authorize and direct my Employer to deduct from my pay each period, regardless of whether I am or remain a member of ASEA, the amount of dues certified by ASEA, and as they may be adjusted periodically by ASEA. I further authorize my Employer to remit such amount monthly to the ASEA. My decision to pay my dues by way of payroll deduction, as opposed to other means of payment, is voluntary and not a condition of my employment.

> This voluntary authorization and assignment shall be irrevocable, regardless of whether I am or remain a member of ASEA, for a period of one year from the date of execution or until the termination date of the collective bargaining agreement . . . between the Employer and the Union, whichever occurs sooner, and for year to year thereafter, unless I give the Employer and the Union written notice of revocation not less than ten (10) days and not more than twenty (20) before the end of any yearly period.[5]

Plaintiff also checked the box on the form that read: "Yes, I choose to be a union member."[6]

On June 27, 2018, the Supreme Court issued its decision in Janus v. American Federation of State, County, and Municipal Employees, Council 31, 138 S. Ct. 2448 (2018). Janus involved a challenge by an Illinois state employee to a state statute that authorized the imposition of agency fees for nonunion members. Id. at 2461. The Court held that "States and public-sector unions may no longer extract agency fees from nonconsenting employees" because "[t]his procedure violates the First Amendment. . . ." Id. at 2486. The Court stated that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." Id.

Before the Supreme Court decided Janus, employees in the GGU bargaining unit who did not choose to join ASEA were required to pay agency fees to ASEA to cover their share of the cost of providing collective bargaining representation. The chargeable portion of

---

[5]Union Membership Care/Payroll Deduction Authorization at 1, Exhibit G, Joint Stipulation of Material Facts, Docket No. 36.

[6]Id. at 2.

-4-

agency fees was less than full member dues. At the time, these fees were authorized under Supreme Court precedent and state law (AS 23.40.110(b)(2)). Immediately after the Supreme Court issued its decision in <u>Janus</u>, the State stopped collecting and ASEA stopped receiving agency fees from nonmembers.

In September 2019, the State, pursuant to Administrative Order No. 312, stopped dues deductions for state employees, including plaintiff. Administrative Order No. 312 was "issue[d] to establish a procedure that ensures that the State of Alaska honors the First Amendment free speech rights of state employees to choose whether or not to pay union dues and fees through payroll deduction."[7] The procedure set out in Administrative Order No. 312 called for employees to provide their consent for the deduction of union dues or fees directly to the State and gave employees the right to revoke their consent at any time.[8] Legal action between the State and ASEA over Administrative Order No. 312 ensued, and on October 3, 2019, a state court issued a temporary restraining order enjoining the State from implementing Administrative Order No. 312 or changing the State's union dues deduction practices.[9] On November 5, 2019, the state court issued a preliminary injunction incorporating all of the terms of the temporary restraining order. This preliminary injunction remains in place.

---

[7] Administrative Order No. 312, Exhibit O at 1, Joint Stipulation of Material Facts, Docket No. 36.

[8] <u>Id.</u> at 3-4.

[9] Exhibit P at 22-23, Joint Stipulation of Material Facts, Docket No. 36.

-5-

Plaintiff's term as a union steward ended on September 30, 2019. On November 26, 2019, plaintiff sent ASEA a written resignation of his membership and objection to dues deductions. Plaintiff was advised that he was not eligible to opt out of paying dues until June 2020.[10] ASEA has treated plaintiff's lawsuit as a revocation request and instructed the State to stop making deductions from plaintiff's wages as of July 25, 2020, the beginning of the revocation window period stated in plaintiff's August 14, 2017 dues authorization form.

On April 1, 2020, plaintiff commenced this action on behalf of himself and others similarly situated. Plaintiff's complaint contains three counts. In Count I, plaintiff asserts a § 1983 claim based on allegations that defendants have violated his First Amendment rights by only allowing him to revoke his dues deduction authorization during one ten-day period each year. In Count II, plaintiff asserts a § 1983 claim based on allegations that defendants have deprived him of his First Amendment rights because they are deducting and collecting union dues without clear and compelling evidence that he has waived his First Amendment rights to free speech and association. In Count III, plaintiff asserts a § 1983 claim based on allegations that the indemnification clause in the current CBA is void and unenforceable as against public policy.

ASEA now moves for summary judgment on all of plaintiff's claims asserted against it and defendant Tshibaka. Although Tshibaka has opposed the instant motion, ASEA

---

[10]Email from Toya Winton to Christopher A. Woods, Exhibit K at 3, Joint Stipulation of Material Facts, Docket No. 36.

contends that judgment should be granted in her favor was well as ASEA's because plaintiff's claims against both defendants fail as a matter of law. "When a plaintiff's claims fail as a matter of law on a motion for summary judgment filed by one defendant, then all defendants are entitled to a final judgment in their favor on those claims, regardless of whether they joined in the motion." HSBC Bank USA, N.A. v. Williston Investment Group LLC, Case No. 2:17–CV–331 JCM (CWH), 2018 WL 2110599, at *3 (D. Nev. May 7, 2018) (citing Lewis v. Lynn, 236 F.3d 766, 768 (5th Cir. 2001)).

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "'[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'" Arandell Corp. v. Centerpoint Energy Services, Inc., 900 F.3d 623, 628–29

-7-

(9th Cir. 2018) (quoting T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)).

All of plaintiff's claims are § 1983 claims. "'To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law.'" Naffe v. Frey, 789 F.3d 1030, 1035–36 (9th Cir. 2015) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)). ASEA argues that plaintiff's claims fail as to both elements.

First of all, ASEA argues that plaintiff's claims against it fail because it was not acting under color of state law.[11] "'[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (quoting Amer. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). The court applies a "two-prong framework for analyzing when governmental involvement in private action is itself sufficient in character and impact that the government fairly can be viewed as responsible for the harm of which the plaintiff complains." Naoko Ohno v. Yuko Yasuma, 723 F.3d 984, 994 (9th Cir. 2013). "The first prong asks whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." Id. (citation omitted). "The

---

[11]ASEA only advances this argument on behalf of itself.

second prong determines whether the party charged with the deprivation could be described in all fairness as a state actor." Id.

The Ninth Circuit recently held that the first prong was not met in a case in which union members alleged that their First Amendment rights were violated because the dues deduction forms that they signed, which were identical to the one signed by plaintiff in 2017, "were signed without a constitutional waiver of rights." Belgau v. Inslee, 975 F.3d 940, 947 (9th Cir. 2020). The Ninth Circuit concluded that "the 'source of the alleged constitutional harm' is not a state statute or policy but the particular private agreement between the union and Employees." Id. (quoting Ohno, 723 F.3d at 994). ASEA argues that the same is true here, that the source of plaintiff's alleged constitutional harm is the private agreement between him and ASEA.

Plaintiff argues however that the first prong is met here because the dues deductions at issue were made pursuant to a state statute, namely AS 23.40.220, which provides:

> Upon written authorization of a public employee within a bargaining unit, the public employer shall deduct from the payroll of the public employee the monthly amount of dues, fees, and other employee benefits as certified by the secretary of the exclusive bargaining representative and shall deliver it to the chief fiscal officer of the exclusive bargaining representative.

Plaintiff argues that his injury stems from this statute and the State's agreement with ASEA rather than his agreement with ASEA. Plaintiff argues that his injury did not result from the dues deduction form because his constitutional rights were violated not because of some

-9-

words on this form but rather because of "the State's and ASEA's seizure of monies for union speech from [p]laintiff's and [putative] class members' wages."[12]

Belgau involved a state statute similar to AS 23.40.220 which "directed Washington to collect the dues on behalf of [the union] from union members who authorized the deduction." Belgau, 975 F.3d at 946. Yet, despite this state statute, the Ninth Circuit found that the "'source of the alleged constitutional harm' [was] not a state statute or policy but the particular agreement between the union and Employees." Id. at 947 (quoting Ohno, 723 F.3d at 994). The same is true here. The source of plaintiff's alleged constitutional harm is his agreement with ASEA, not a state statute or policy, which means the first prong, the state policy prong, has not been met.

But even if there were some question as to whether the first prong was met here, ASEA argues that the second prong, the state actor prong, has not been met. Plaintiff argues that ASEA is a state actor under either the "public function" test or the "joint action" test. "The former treats private actors as state actors when they perform a task or exercise powers traditionally reserved to the government." Ohno, 723 F.3d at 996. "The latter focuses on whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Id. (citation omitted). "'Joint action' exists where the

---

[12]Plaintiff's Opposition to [ASEA's] Motion for Summary Judgment at 16, Docket No. 40 (emphasis omitted).

-10-

government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party[.]" Id.

Any argument that ASEA meets the "joint action" test is foreclosed by Belgau, which involved the same issues and nearly identical facts as this case. There, the Ninth Circuit held that the union was not a state actor under the joint action test. Belgau, 975 F.3d at 947.

Any argument that ASEA meets the "public function" test is also foreclosed by Belgau, in which the Ninth Circuit noted that the union did "not qualify as a state actor under other tests the Supreme Court has articulated--the public function, the state compulsion, and the governmental nexus tests." Id. at 947 n.2. Contrary to plaintiff's contention, the State of Alaska has not partially delegated to ASEA how much it will pay its employees. Moreover, paying employees is not a function that is "both traditionally and exclusively governmental." Lee v. Katz, 276 F.3d 550, 555 (9th Cir. 2002). Rather, it is a function that every employer, private or public, carries out.

Neither the joint action test nor the public function test is met here. Thus, ASEA is not a state actor, which means all of plaintiff's claims against ASEA fail because it was not acting under color of state law.

But even if it were acting under color of state law, ASEA argues that plaintiff's claims in Count I and II against it and defendant Tshibaka would still fail because plaintiff's First Amendment rights have not been violated. "Compelling a person to subsidize the speech of other private speakers raises . . . First Amendment concerns." Janus, 138 S. Ct. at 2464. It

-11-

Case 3:20-cv-00074-HRH   Document 43   Filed 10/27/20   Page 11 of 18

is a "bedrock principle that, except perhaps in the rarest of circumstances, no person in this country may be compelled to subsidize speech by a third party that he or she does not wish to support." Harris v. Quinn, 573 U.S. 616, 656 (2014).

In Count I, plaintiff contends that ASEA violated his First Amendment rights by limiting his right to revoke his dues deduction authorization to a ten-day window each year. This court recently rejected a similar argument in Creed, 2020 WL 4004794, at *7, because the plaintiffs in that case had "affirmatively consented to pay union dues and agreed that their consent could only be revoked during a specific period." Id. "'Each court that has examined this issue has rejected the claim that Janus entitles union members to resign and stop paying dues on their own—rather than on the contract's—terms.'" Id. (quoting Hendrickson v. AFSCME Council 18, 434 F. Supp. 3d 1014, 1024 (D.N.M. 2020)). Here, it is undisputed that plaintiff affirmatively consented to pay union dues and agreed that his consent could only be revoked during a specific period. As the Ninth Circuit recently observed, ""[t]he First Amendment does not support [an employee's] right to renege on [his] promise to join and support the union. This promise was made in the context of a contractual relationship between the union and its employees." Belgau, 975 F.3d at 950. Thus, plaintiff's § 1983 claim in Count I fails because there has been no violation of his First Amendment rights in connection with the revocation window.

Plaintiff's and Tshibaka's arguments to the contrary are unavailing  Plaintiff argues that this case is distinguishable from Creed because there, the plaintiffs did not "argu[e] that

-12-

the revocation window is itself unconstitutional." Creed, 2020 WL 2004794, at *10. But here, plaintiff contends he has alleged that the revocation window is unconstitutional. Plaintiff also argues that Janus plainly applies to this case because he was required to continue paying union dues after he resigned from the union. In other words, plaintiff argues that when he resigned his union membership, he became a nonmember, which means that "Janus governs the dues seizures at issue in this case."[13] Tshibaka similarly argues that plaintiff's First Amendment rights were violated after he withdrew his consent. Tshibaka argues that "an employee has the constitutional right to stop associating with a union at any time."[14]

But this is the very argument that the Ninth Circuit rejected in Belgau. There, the plaintiffs had voluntarily joined the union and then "[a]fter the Janus decision," notified the union "that they no longer wanted to be union members or pay dues." Belgau, 975 F.3d at 946. "However, pursuant to the terms of the revised membership agreements, Washington continued to deduct union dues from [the] Employees' wages under the irrevocable one-year terms expired." Id. The "Employees . . . argue[d] that the Court's decision in Janus voided the commitment they had made and now requires the state to insist on strict constitutional waivers with respect to deduction of union dues." Id. at 950. The Ninth Circuit rejected that

---

[13]Plaintiff's Opposition to [ASEA's] Motion for Summary Judgment at 8, Docket No. 40.

[14]Response of Defendant Kelly Tshibaka to Defendant ASEA's Motion for Summary Judgment at 14, Docket No. 39.

argument, explaining that "[t]he First Amendment does not support Employees' right to renege on their promise to join and support the union." Id.

Similarly here, plaintiff voluntarily joined the union and agreed that he could only revoke his dues authorization during a ten-day period each year. Nothing in Janus allows him to avoid these commitments. As the Ninth Circuit explained, "'[t]he First Amendment [does not] provide a right to 'disregard promises that would otherwise be enforced under state law.'" Id. (quoting Cohen v. Cowles Media Co., 501 U.S. 663, 671 (1991)). Plaintiff's First Amendment rights have not been violated because he was only allowed to revoke his dues deduction authorization during a specific ten-day window each year. Thus, plaintiff's First Amendment claim in Count I fails as a matter of law.

In Count II, plaintiff contends that defendants violated his First Amendment rights because they were deducting and collecting union dues without clear and compelling evidence that he had waived his First Amendment rights to free speech and association. But, the Ninth Circuit recently "join[ed] the swelling chorus of courts recognizing that Janus does not extend a First Amendment right to avoid paying union dues." Id. at 951. The Ninth Circuit rejected the argument "that Janus requires . . . any waiver of the First Amendment right to be 'freely given and shown by clear and compelling' evidence." Id. at 951-52 (quoting Janus, 138 S. Ct. at 2486). The Ninth Circuit explained that Janus "in no way created a new First Amendment waiver requirement for union members before dues are deducted pursuant to a voluntary agreement." Id. Because the plaintiffs in Belgau had

"affirmatively consented to the deduction of union dues[,]" the Ninth Circuit held that there had been no First Amendment violation. Id. at 944.

Plaintiff, however, argues that his First Amendment rights were violated because the dues deduction form does not provide a knowing and intelligent waiver of First Amendment rights. Tshibaka similarly argues that the dues deduction form does not provide a clear waiver of First Amendment rights. Plaintiff and Tshibaka appear to be arguing that the form does not make it clear that the individual is waiving his First Amendment right to stop associating with the union at a time of his choosing.

This argument fails in light of Belgau. The Ninth Circuit "recogniz[ed] that Janus does not extend a First Amendment right to avoid paying union dues." Id. at 951. Yet, that is exactly what plaintiff is arguing here. Thus, plaintiff's First Amendment claim in Count II fails as a matter of law.

As for Count III, plaintiff's claim in this count is based on allegations that the indemnification clause in the current CBA is void and unenforceable as against public policy. The indemnification clause in the current CBA provides that

> [t]he Union shall defend, indemnify, and save the Employer harmless against any and all claims, demands, suits, grievances, or other liability (including attorneys' fees incurred by the Employer) that arise out of or by reason of actions taken by the Employer pursuant to this Article [which includes a provision on

-15-

> payroll deductions], except those actions caused by the Employer's negligence.[15]

Plaintiff alleges that maintenance of this clause violates his First Amendment rights and thus it is void and unenforceable as against public policy.

ASEA argues that even if it were acting under color of state law, which it was not, plaintiff's claim in Count III would fail for a lack of standing. "In order to have standing, a plaintiff must establish an injury in fact, causation, and redressability." Prescott v. County of El Dorado, 298 F.3d 844, 846 (9th Cir. 2002). In Prescott, the court considered whether "the plaintiffs lacked standing to challenge an indemnification provision in a collective bargaining agreement." Id. at 845. The indemnification "provision require[d] the union to hold the employer harmless from any liability arising out of the collection of agency fees from non-union members of the bargaining unit." Id. The plaintiffs were "non-union members of an agency shop bargaining unit employed by defendant El Dorado County, California." Id. "The only cognizable injury the plaintiffs allege[d was] that the union did not give them adequate notice of the basis of the fees." Id. Pursuant to Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 310 (1986), the union was required to "provide notice of the basis of agency fees that plaintiffs must pay as members of an agency shop. . . ." Id. at 846. The plaintiffs alleged that they had been injured because the union failed to comply with the Hudson notice requirement. Id. The court found that there was no "causal

---

[15]Current CBA, Art. 3, §3.06, page 8, Exhibit A, Joint Stipulation of Material Facts, Docket No. 36.

relationship" between this alleged injury and the indemnification provision. Id. The plaintiffs had argued that there was such a relationship "because the Hudson notice requirement is triggered by the collective bargaining agreement, and because the employer has stipulated that it would not have entered into the collective bargaining agreement unless it contained the indemnification clause, the indemnification clause is the legal cause of the inadequate Hudson notice." Id. But, the court found this causal relationship to be "too remote[.]" Id. The court also found that the plaintiffs had failed to meet the redressability requirement of standing because "[t]he remedy the plaintiffs seek, invalidation of the indemnification clause, does not compensate plaintiffs for past violations of Hudson, nor does it prevent future violations." Id.

Plaintiff argues that, unlike the plaintiffs in Prescott, he has standing. He contends that his constitutional injury was the seizure of "union dues from [his] wages without clear and convincing evidence that [he] consented to those deductions and waived [his] First Amendment rights."[16] Plaintiff argues that the indemnification clause relieves the State of its duty to not violate its employees' First Amendment rights and therefore there is a causal connection between his constitutional injury and the indemnification clause in the current CBA.

---

[16]Plaintiff's Opposition to [ASEA's] Motion for Summary Judgment at 24, Docket No. 40.

But, as discussed above, there has been no violation of plaintiff's First Amendment rights. So, it follows that plaintiff's challenge to the indemnification clause in the current CBA fails for a lack of standing because he cannot show any injury in fact.

Conclusion

ASEA's motion for summary judgment[17] is granted. The clerk of court shall enter judgment dismissing plaintiff's complaint against ASEA and Tshibaka with prejudice.

DATED at Anchorage, Alaska, this 27th day of October, 2020.

/s/ H. Russel Holland
United States District Judge

---

[17] Docket No. 38.